WICKER, Judge.
This appeal arises from a suit on a note and recognition of a second mortgage. The action was filed on behalf of Pelican Homestead and Savings Association, (Pelican) plaintiff/appellee, against defendants Agnes Goff Campbell and Charles G. Campbell. Pelican filed a motion for summary judgment which was granted. The trial judge rendered judgment in favor of Pelican recognizing its mortgage and casting the defendants in solido in judgment for $89,459.42 plus advances for taxes and insurance, interest, late charges, and attorney’s fees. Agnes Goff Campbell (Campbell) now appeals that judgment. We affirm.
On May 30, 1991 we recognized a partial automatic stay of the proceedings on the basis defendant Charles G. Campbell had filed for relief under Chapter 11 of the United States Bankruptcy Code on April 2, 1991, Case No. 91-11262, Eastern District of Louisiana. 11 U.S.C. Section 362(a). However, this Court received no notifica *180 tion Agnes Goff Campbell filed a Chapter 11 Bankruptcy petition. Additionally, it did not receive any order from the bankruptcy court that the proceedings of this matter were stayed as to Agnes Goff Campbell on any other grounds.
We have previously recognized the 11 U.S.C. Section 362(a) automatic stay as it applies to the debtor. Expressway Texaco Service v. Orgeron, 517 So.2d 397 (La. App. 5th Cir.1987). In Orgeron we only recognized the automatic stay as to the third party defendant who had filed for relief under Chapter 11 and not to any other nonbankrupt debtor.
In Orgeron we followed the holding in Wedgeworth v. Fibreboard Corp., 706 F.2d 541 (5th Cir.1983). The Wedgeworth court held that Section 362(a) does not automatically stay the proceedings against co-debtors. In Wedgeworth the court distinguished between 11 U.S.C. Section 362(a) and 11 U.S.C. Section 1301(a). The court noted at 544:
By way of comparison, Chapter 13 specifically authorizes the stay of actions against co-debtors. 11 U.S.C. Section 1301(a) (“a creditor may not commence or continue any civil action ... [against] any individual that is liable on such debt with the debtor”). No such shield is provided Chapter 11 co-debtors by Section 362(a).
On May 30, 1991 we issued the following order:
Accordingly, WE RECOGNIZE the stay pursuant to 11 U.S.C. Section 362(a) as it applies to Charles G. Campbell, and take no further action in the proceeding filed on behalf of PELICAN HOMESTEAD AND SAYINGS ASSOCIATION against CHARLES G. CAMPBELL until authorized to do so by the Bankruptcy Court. The claim against AGNES GOFF CAMPBELL is to proceed in regular order. We hold that no stay order of the proceedings against AGNES GOFF CAMPBELL, based solely on the existence of the pending bankruptcy proceedings involving CHARLES G. CAMPBELL, may validly issue at this time.
IT IS FURTHER ORDERED that the Clerk of this court is directed to transmit a certified copy of this order to Judge Thomas M. Brahney, III, United States Bankruptcy Judge, Bankruptcy Court Unit, United States Eastern District Court.
Pelican’s motion for summary judgment was based on the following:
the pleadings and documents filed into the record in this case show that there is no genuine issue as to material fact and that the mover is entitled to summary judgment as a matter of law, particularly as regards application of the D’Oench Duhme Doctrine[.]
On appeal from the adverse judgment Campbell specifies the following errors:
1. The trial court erred by applying the D’Oench Duhme doctrine to the circumstances of this case in the absence of evidence that the appellee was a purchaser for consideration of the promissory note or detrimentally relied upon the loan record in acquiring the note; and
2. There is insufficient evidence in the record to support the appellee’s claim of the benefit of the D’Oench Duhme doctrine.
Campbell argues there is no proof Pelican purchased the promissory note for consideration from the Federal Savings and Loan Insurance Corporation (FSLIC). She also contends there is no proof Pelican relied to its detriment upon the loan records in becoming the transferee of the note.
The Campbells pled the following defenses to suit by Pelican:
XIY.
Gulf Federal Savings and Loan Association negligently contributed to the defendants’ failure to perform, if any, in violation of Civil Code Article 2003. Consequently, the plaintiff’s claim must be reduced in proportion to that negligence. The plaintiff's negligence was the sole cause of the alleged failure of the defendants to perform. Therefore, the plaintiff is not entitled to any recovery whatsoever.
*181 XV.
Alternatively, the plaintiffs own bad faith caused the alleged failure of the defendants to perform; which violates Civil Code Article 2003. Consequently, the plaintiffs are not entitled to recover any amount whatsoever on their claim.
XVI.
At the time of the making of the loan referred to in the plaintiffs petition, that loan was part of a transaction which included an agreement by the plaintiff to extend a line of credit to the defendants for the purpose of funding the cash flow needs of their business.
XVII.
At the time of the making of the loan referred to in the plaintiffs petition, the plaintiffs [sic] knew that income from the defendants’ business would be the sole source of funds to repay the aforesaid loan. The plaintiffs also knew that unless they honored their agreement to provide a line of credit, and to extend credit in accordance therewith, that the plaintiffs’ business would fail.
XVIII.
Prior to making the loan referred to in the plaintiff’s petition, the plaintiff imposed certain requirements upon the defendants concerning the management and operation of their business; and the defendants fully complied with those requirements. Furthermore, the plaintiffs made the aforesaid loan only after satisfying itself that the defendants had met or exceeded all of the revenue projections which the plaintiff considered in making the loan.
XIX.
The plaintiffs cut off the defendants’ line of credit without any good cause. At the time that the plaintiff violated its’ line of credit agreement, the defendants were not in default on the loan, they had exceeded their revenue projections, and the defendants’ security had not been, in any way, impaired. When the plaintiffs cut off the line of credit, it knew, or should have known, that the defendant would not be able to continue business operations, and that it would cause the defendant to be unable to pay the loan referred to in the plaintiff’s petition.
The threshold issue is whether as a matter of law, Pelican is immune from the Campbells’ defenses pursuant to 12 U.S.C. Section 1823(e) (1950) and D’Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) on the basis Gulf Federal, through its successor, Pelican, breached an agreement by cutting off a line of credit without good cause.
In Planters Trust & Sav. Bank v.L&W Farms, 496 So.2d 1268 (La.App.3rd Cir. 1986), writ denied, 499 So.2d 87 (La.1987) the court correctly noted at 1271-1272:
It is well established, under both federal common law and statutory provisions, that oral agreements between borrowers and banks are ineffective against the FDIC as a receiver where the agreements are not recorded [citations omitted].
The rule which proscribes the enforcement of unwritten agreements evolved from the case of D’Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The Fifth Circuit interpreted D’Oench as holding that a defendant would not be allowed to assert as a defense to a claim by the FDIC that a written document which is valid on its face, is modified by a secret agreement. Federal Deposit Ins. Corp. v. Hoover-Morris Enterprises, 642 F.2d 785 (5th Cir. 1981).
In 1950, Congress added a second paragraph to 12 U.S.C. Section 1823(e), which protects the FDIC from secret agreements, and because of this protection the FDIC can rely upon the records of a bank when purchasing its assets. Federal Deposit Ins. Corp. v. Hoover-Morris Enterprises, supra. The language of the statute is as follows:
*182 “(e) Agreements against interests of Corporation
No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.”
D’Oench and Section 1823(e) demonstrate the policy in federal banking law that the FDIC should not be bound by anything outside a bank’s records when the FDIC purchases the bank loans and loan documents. Federal Deposit Ins. Corp. v. MM & S Partners, 626 F.Supp. 681 (N.D.I11.1985). The effect of Section 1823(e) is to insulate the FDIC in its official capacity from any claims a debtor of an insolvent bank may have against the insolvent bank. Federal Dep. Ins. Corp. v. James T. Barry Co., 453 F.Supp. 81 (E.D.Wis.1978).
The Congressional purpose in creating the FDIC was to promote soundness of banking and to aid the government in the discharge of its financial transactions. Federal Deposit Ins. Corp. v. Rockelman, 460 F.Supp. 999 (E.D.Wis.1978). These sound policy reasons dictate against holding the FDIC liable for knowledge of side agreements as well as the hidden value of bank assets. F.D.I.C. v. Merchants Nat. Bank of Mobile, 725 F.2d 634 (11th Cir.1984), cert. den., 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984).
“Typically, the FDIC must move quickly in buying a bank’s assets, and it should not be obliged to rummage through a bank’s records to find the hidden value of the notes. See [Federal Deposit Ins. Corp. v. Wood, 758 F.2d [156] at 161 [ (6th Cir.1985) ]. See also [Federal Deposit Ins. Corp. v.] Harrison, 735 F.2d [408] at 412-13 n. 6 [(11 Cir.1984)] (federal policy to promote stability of nation’s banking system by facilitating FDIC’s smooth acquisition of assets). Therefore, the policy supporting FDIC protection in collateral agreement situations applies equally to all situations in which the maker’s defense is based on something, representations or conduct, outside of the note itself.” (Footnote omitted.) Federal Deposit Ins. Corp. v. MM & S Partners, 626 F.Supp. 681, at page 687 (N.D.Ill.1985).
⅜ ⅜ ⅜ ⅜ S)C ⅝!
The Supreme Court has made clear that agreements which avoid the requirements intended to protect the FDIC are invalid. Section 1823(e) is explicit in its requirements for the validity of collateral agreements. Federal Deposit Ins. Corp. v. de Jesus Velez, 678 F.2d 371 (1st Cir. 1982).
It has been held that Section 1823(e) is a sufficient basis to grant summary judgment on a defendant's fraud in the inducement defense. Federal Deposit Ins. Corp. v. Hatmaker, 756 F.2d 34 (6th Cir.1985). In Hatmaker, the court found that Section 1823(e) clearly covers a defense based on an oral promise by the bank to make future loans to the borrower which the bank does not intend to perform. Any affirmative defense that flows from an oral agreement is barred by this statute, even if phrased in terms of fraud in the inducement. Federal Deposit Ins. Corp. v. Vestring, 620 F.Supp. 1271 (D.C.Kan.1985).
“If an obligor may successfully void a note and recoup damages against the FDIC based on a claim of fraudulent inducement from an unwritten agreement, he will have made an end run around Section 1823(e) by asserting as fraudulent the same unwritten agreement of which a breach resulting in *183 damages may not under Section 1823(e) be asserted against the FDIC.” Federal Deposit Ins. Corp. v. Lattimore Land Corp., 656 F.2d 139, at page 146 (5th Cir.1981).
The D’Oench, Duhme doctrine and Section 1823(e) have been applied to FSLIC. Federal Sav. & Loan Ins. v. Lafayette Inv. Prop., 855 F.2d 196 (5th Cir.1988). The doctrine has also been extended to an as-signee/receiver of a failed federal bank. Federal Land Bank of Jackson v. Shaffett, 757 F.Supp. 22, 24 (M.D.La.1991). In Gulf Federal Savings & Loan Association v. Mulderig, 742 F.Supp. 358, 361 (E.D.La. 1989) the court explained:
The Supreme Court created the D’Oench doctrine to promote stability in the banking system by protecting the FDIC and FSLIC from shady and dishonest borrowers attempting to avoid their liabilities through claims of secret agreements which contradict the terms of the written loan agreements. If the D’Oench doctrine were unavailable to successor banks of the FDIC and FSLIC, then these agencies would have great difficulty in finding such banks due to the obvious risks involved for any succeeding banks.
Upon liquidation of a bank, FSLIC has “no liability to pay off the claims of unsecured creditors.” Santopadre v. Pelican Homestead & Sav. Ass’n, 937 F.2d 268 (5th Cir. 1991) at 272. This nonexistant liability cannot be “revitalized and passed to the bridge bank in the purchase and assumption transaction.” Id.
Appellant argues the granting of summary judgment was improper on the basis there was no proof of purchase of the note for consideration from the FSLIC or FDIC or reliance to Pelican’s detriment upon loan records. However, Pelican attached ample documentation in support of its motion for summary judgment and that documentation was not controverted. The documentation in support of Pelican’s motion was as follows:
The affidavit of Arthur J. Keenan, Jr., Executive Vice President in Charge of Special Assets of the Pelican Homestead and Savings Association, successor by merger with Gulf Federal Savings and Loan Association. Keenan averred the following based upon his personal knowledge:
a. Gulf Federal Savings and Loan Association changed its name to Gulf Federal Savings Bank.
b. On November 21, 1986, the Federal Home Loan Bank Board appointed the FSLIC as receiver for Gulf Federal Savings Bank. On the same date the FSLIC, as receiver, transferred substantially all of the assets of the Gulf Federal Savings Bank to Gulf Federal Savings and Loan Association. The notarial act of deposit dated March 25, 1987 was attached to Keenan’s affidavit. It provided in pertinent part:
“That, the FEDERAL HOME LOAN BANK BOARD (BANK BOARD) pursuant to 12 CFR Sections 547.1, 547.2 and 547.6 did adopt its Resolution No. 86-1177P, dated Novembér 21, 1986, pursuant to which the FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION (FSLIC) was duly appointed as Receiver for the GULF FEDERAL SAVINGS BANK, and pursuant to which FSLIC, as Receiver, took possession and has succeeded by operation of law to the rights, title, power and privileges, assets and property of GULF FEDERAL SAVINGS BANK.
That pursuant to Resolution NO. 86-1179P, dated November 21, 1986, the BANK BOARD authorized FSLIC, as Receiver, to sell and transfer substantially all of the assets and liabilities of GULF FEDERAL SAVINGS BANK to GULF FEDERAL SAVINGS AND LOAN ASSOCIATION and to enter into the Acquisition Agreement between FSLIC, as Receiver, and GULF FEDERAL SAVINGS AND LOAN ASSOCIATION and the Receiver’s agreement between the FSLIC in its corporate capacity and the FSLIC in its capacity as Receiver.”
Additionally, a document of approval from the Federal Home Loan Bank Board *184 dated December 30, 1987 was attached to Pelican’s pleadings. It provided in pertinent part:
“WHEREAS, the PSLIC has proposed that the Receiver transfer substantially all of the assets and liabilities of the Closed Association [Gulf Federal Savings and Loan Association] to Pelican[,] the accounts of which are insured by the FSLIC[.]”
c. Gulf Federal Savings and Loan Association’s merger agreement with Pelican dated December 30, 1987 was presented in support of the motion. That agreement provided for the transfer of “all of the assets and property of every kind or character... then owned by [Gulf Federal Savings and Loan Association].”
d. After the merger the payment histories of existing Gulf Federal Savings and Loan Association accounts were converted to Pelican’s system.
e. He is.., familiar with delinquent accounts and is familiar with the Campbell’s note. The note and mortgage were attached.
f. He certified the Campbell’s account was in arrears for $89,459.42, plus interest, late charges, advances for taxes and insurance, and attorney’s fees.
Appellant did not contest the validity of the documentation at the hearing. We conclude there is ample documentation for applying the D’Oench, Duhme Doctrine and 12 U.S.C. Section 1823(e). Pelican is immune from Campbell’s defenses. Planters Trust & Sav. Bank, supra.
Accordingly, we affirm the trial court's granting of summary judgment in favor of Pelican and its recognition of Pelican’s mortgage.
AFFIRMED.