656 So.2d 747 (1995)
ITT RESIDENTIAL CAPITAL CORPORATION
v.
Phenix Sheng CHEUK and Shu Lau Cheuk.
No. 94-CA-744.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 1995.
*748 Jane F. Mentz and Stacy C. Wheat, Shapiro & Kreisman, Metairie, for plaintiff/appellee, ITT Residential Capital Corp.
Jerome Friedman, Metairie, for defendants/appellants, Phenix Sheng Cheuk and Shu Lau Cheuk.
Before BOWES, GOTHARD and CANNELLA, JJ.
*749 BOWES, Judge.
Defendants, Phenix Sheng Cheuk and Shu Lau Cheuk (hereinafter "Cheuk"), appeal from a ruling of the trial court granting summary judgment in favor of plaintiff, ITT Residential Capital Corporation (hereinafter "ITT Corp."). We affirm in part and annul and set aside in part.
ITT Corp. filed a petition to enforce mortgage on real estate, via ordinaria on May 10, 1993. In the petition, ITT Corp. alleges that it is the owner of a promissory note executed by Cheuk dated October 3, 1984 in the principal sum of One Hundred Thirty Thousand ($130,000.00) Dollars, which it obtained through assignment from Broekema & Associates. Broekema obtained the note in a bulk transfer from the Resolution Trust Corporation (RTC). The note is secured by an act of mortgage executed on October 3, 1984 against property bearing the address 2813 Greenwood Park, Kenner, Louisiana. The petition further alleges that:
Petitioner avers that the said note and mortgage are past due and exigible and that the monthly installment due on February 1, 1992 and all subsequent installments are due and unpaid, and that because of said default, the entire unpaid principal balance in the sum of $115,343.41 together with interest at the rate of 7.360% percent per annum from January 1, 1992 until December 1, 1992, the next change date provided for in said note, and with interest at the rate of 7.000% percent per annum from December 1, 1992 until the next change date provided for in said note or until said note is paid in full, whichever occurs first, plus a late charge of $48.46 on each delinquent installment of principal and interest from February 16, 1992 through December 16, 1992 and a late charge of $47.29 on each delinquent installment of principal and interest from January 16, 1993 to present, together with reasonable attorney's fees are due, owing and unpaid.
Cheuk answered, denying the allegations of plaintiff's petition and further asserting several affirmative defenses. ITT Corp. filed a motion for summary judgment; a hearing was held on that motion on January 24, 1994 at which time the trial court took the matter under advisement. On April 13, 1994, the trial court issued a judgment, with reasons, granting plaintiff's motion for summary judgment. The defendants filed a motion for appeal on May 12, 1994, which was granted by the trial court on May 17, 1994. However, also on May 17, 1994, the trial court rendered a second judgment which again granted summary judgment in favor of plaintiffs, in the amount as prayed for in the petition, but in addition added "together with reasonable attorney's fees on both principal and interest and all costs of these proceedings."
On appeal, defendants present four assignments of error which raise the following three issues:
1. and 2. The trial court erred in finding that there were no issues of material fact and that plaintiff was entitled to summary judgment as a matter of law.
3. The trial court erred granting summary judgment despite the existence of unanswered discovery and an outstanding rule to compel answers to that discovery.
4. The trial court erred in rendering a second judgment dated May 17, 1994 subsequent to its original judgment of April 13, 1994 in which it substantially altered the content of its April 13, 1994 judgment and added provisions for interest costs and attorney's fees.

ANALYSIS
A motion for summary judgment may be granted if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La.C.C.P. Article 966.
In Billiot v. B.P., Oil Company, Wingard, 93-1118 (La. 9/29/94), 645 So.2d 604, the Louisiana Supreme Court said:
A "genuine issue" is a "triable issue." More precisely, "[a]n issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there *750 is no need for a trial on that issue. Summary judgment is the means for disposing of such meretricious disputes." In determining whether an issue is "genuine," courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. "Formal allegations without substance should be closely scrutinized to determine if they truly do reveal genuine issues of fact."
A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." Simply put, a "material" fact is one that would matter on the trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits.
* * * * * *
Procedurally, the court's first task on a motion for summary judgment is determining whether the moving party's supporting documentspleadings, depositions, answers to interrogatories, admissions and affidavitsare sufficient to resolve all material factual issues. "To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact." In making this determination, the mover's supporting documents must be closely scrutinized and the non-mover's indulgently treated. Since the moving party bears the burden of proving the lack of a material issue of fact, inferences to be drawn from the underlying facts before the court must be viewed in light most favorable to the non-moving party.
If the court determines that the moving party has met this onerous burden, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. LSA-C.C.P. Art. 967 outlines the non-moving party's burden of production as follows:
When a motion for summary judgment is made and supported ... an adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
As this court has oft-stated, summary judgment may be granted when reasonable minds must inevitably conclude that the mover is entitled to judgment on the facts before the court. Likewise, summary judgment is appropriate when all the relevant facts are marshalled before the court, the marshalled facts are undisputed, and the only issue is the ultimate conclusion to be drawn from those facts.
[Citations omitted].
Appellate courts should review the granting of a motion for summary judgment de novo under the same criteria governing the trial court's consideration of whether a summary judgment is appropriate. Potter v. First Federal Sav. and Loan Ass'n of Scotlandville, 615 So.2d 318 (La.1993).
In this lawsuit, the Cheuks asserted various affirmative defenses to the lawsuit, and contested the motion for summary judgment on the basis that issues of fact existed on these various defenses. More specifically, in their answer filed on September 17, 1993, the Cheuks allege that Gulf Federal, the original lender and mortgagee, was in violation of 15 U.S.C.A. 1691, et seq. (the Equal Credit Opportunity Act) by its actions in requiring Mrs. Cheuk to sign the note and mortgage despite the existence of a power of attorney in favor of Mr. Cheuk and, therefore, they were entitled to an offset of regular and punitive damages.
In their second amended answer filed on January 27, 1994 (the date of the hearing on the motion for summary judgment), the Cheuks alleged the defenses of failure of consideration for the note and mortgage, and false and fraudulent acts by the lender in the execution of the note and mortgage. The Cheuks also alleged that ITT Corp. failed to *751 give sufficient notice of default and/or amicable demand in accordance with the terms of the note and mortgage.
In his judgment of April 13, 1994 granting summary judgment, the trial judge found that there was no issue of law or fact regarding Mrs. Cheuk's signature. The judge further found that the Cheuks were precluded from raising their affirmative defenses by application of the ruling of the case of D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) (which has now become known as the "D'Oench doctrine") and its subsequent codification in 12 U.S.C.A. § 1823(e), quoted infra. The trial court also concluded that:
In light of the pleadings, documents, affidavits, and the law and evidence in this matter, the Court finds that no genuine issues of material fact exist which preclude the granting of summary judgment and plaintiff is entitled to judgment as a matter of law.
After a careful review of all the evidence presented in the record herein, we find no error in the ruling of the trial judge.

OFFSET AND/OR COMPENSATION
The Cheuks also argue that Gulf Federal, the original lender and mortgagee, was in violation of the Equal Credit Opportunity Act because it required Mrs. Cheuks to sign the note and mortgage after she had executed a power of attorney in favor of Mr. Cheuk. Accordingly, there is an outstanding claim for damages which can be used to offset the amount due to the mortgage holder.
Initially, we note that defendants failed to brief this argument to this court and merely make reference to trial memorandum present in the record. Uniform Rules of CourtCourts of Appeal, Rule 2-12.4 provides that "All specifications of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed." Pursuant to this rule, we need not address plaintiff's claim since it was not presented in the brief filed in this Court. However, assuming arguendo that plaintiff's reference to trial pleadings is sufficient, (which it is not) we find that this allegation does not present a genuine issue of material fact.
Set-off, or compensation, takes place by operation of law when two persons owe to each other sums of money and these sums are liquidated and presently due. In such a case, compensation extinguishes both obligations to the extent of the lesser amount. C.C. art. 1893.
In Oriol v. Ducasse Ins. Agency, Inc., 626 So.2d 3, 5-6 (La.App. 5 Cir.1993) we said:
A claim is liquidated when the debt is for an amount capable of ascertainment by mere calculation in accordance with accepted legal standards. A determination of the liquidity of a claim is an essential prerequisite to deciding whether such a claim is a proper basis for a plea of compensation. Lack of sufficient liquidity and demandability will preclude such a plea.
The claim in this case is for damages for alleged discriminatory practices. The validity of the claim is uncertain and the amount of potential damages is not capable of ascertainment by mere calculation. Therefore, it is clear that this claim is not a liquidated claim which is necessary to allow plaintiff to plead compensation.

FAILURE OF CONSIDERATION; FRAUDULENT AND FALSE ACTS
The defendants further allege that they originally purchased the property with the intent to resell. The original mortgagee fraudulently obtained an inflated value of the property, and they were not able to sell the property as planned. Accordingly, defendants allege as affirmative defenses lack or failure of consideration and fraud. The trial court held that these defenses were barred by the application of the "D'Oench doctrine." We agree.
In Pelican Homestead and Sav. Ass'n v. Campbell, 588 So.2d 179 (La.App. 5 Cir. 1991), which seems to be the only prior case of this Fifth Circuit regarding the D'Oench doctrine, Judge Wicker cited with approval Planters Trust & Sav. Bank v. L & W Farms, 496 So.2d 1268 (La.App. 3rd Cir. 1986), writ denied, 499 So.2d 87 (La.1987).
*752 In Planters, the court correctly noted at pp. 1271-1272:
It is well established, under both federal common law and statutory provisions, that oral agreements between borrowers and banks are ineffective against the FDIC as a receiver where the agreements are not recorded [citations omitted].
The rule which proscribes the enforcement of un written agreements evolved from the case of D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The [federal] Fifth Circuit interpreted D'Oench as holding that a defendant would not be allowed to assert as a defense to a claim by the FDIC [the fact or allegation] that a written document, which is valid on its face, is modified by a secret agreement. Federal Deposit Ins. Corp. v. Hoover-Morris Enterprises, 642 F.2d 785 (5th Cir. 1981).
In 1950, Congress added a second paragraph to 12 U.S.C. Section 1823(e), which protects the FDIC from secret agreements, and because of this protection the FDIC can rely upon the records of a bank when purchasing its assets. Federal Deposit Ins. Corp. v. Hoover-Morris Enterprises, supra. The language of the statute is as follows:
(e) Agreements against interests of Corporation
No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

D'Oench and Section 1823(e) demonstrate the policy in federal banking law that the FDIC should not be bound by anything outside a bank's records when the FDIC purchases the bank loans and loan documents. Federal Deposit Ins. Corp. v. MM & S Partners, 626 F.Supp. 681 (N.D.Ill.1985). The effect of Section 1823(e) is to insulate the FDIC in its official capacity from any claims a debtor of an insolvent bank may have against the insolvent bank. Federal Dep. Ins. Corp. v. James T. Barry Co., 453 F.Supp. 81 (E.D.Wis.1978).
The Congressional purpose in creating the FDIC was to promote soundness of banking and to aid the government in the discharge of its financial transactions. Federal Deposit Ins. Corp. v. Rockelman, 460 F.Supp. 999 (E.D.Wis.1978). These sound policy reasons dictate against holding the FDIC liable for knowledge of side agreements as well as the hidden value of bank assets. F.D.I.C. v. Merchants Nat. Bank of Mobile, 725 F.2d 634 (11th Cir. 1984), cert. den., 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984).
Typically, the FDIC must move quickly in buying a bank's assets, and it should not be obliged to rummage through a bank's records to find the hidden value of the notes. See [Federal Deposit Ins. Corp. v.] Wood, 758 F.2d [156] at 161 [(6th Cir. 1985)]. See also [Federal Deposit Ins. Corp. v.] Harrison, 735 F.2d [408] at 412-13 n. 6 [ (11 Cir.1984) ] (federal policy to promote stability of nation's banking system by facilitating FDIC's smooth acquisition of assets). Therefore, the policy supporting FDIC protection in collateral agreement situations applies equally to all situations in which the maker's defense is based on something, representations or conduct, outside of the note itself. (Footnote omitted.) Federal Deposit Ins. Corp. v. MM & S Partners, 626 F.Supp. 681, at page 687 (N.D.Ill.1985).
* * * * * *
The Supreme Court has made clear that agreements which avoid the requirements intended to protect the FDIC are invalid. Section 1823(e) is explicit in its requirements *753 for the validity of collateral agreements. Federal Deposit Ins. Corp. v. de Jesus Velez, 678 F.2d 371 (1st Cir.1982).
It has been held that Section 1823(e) is a sufficient basis to grant summary judgment on a defendant's fraud in the inducement defense. Federal Deposit Ins. Corp. v. Hatmaker, 756 F.2d 34 (6th Cir.1985). In Hatmaker, the court found that Section 1823(e) clearly covers a defense based on an oral promise by the bank to make future loans to the borrower which the bank does not intend to perform. Any affirmative defense that flows from an oral agreement is barred by this statute, even if phrased in terms of fraud in the inducement. Federal Deposit Ins. Corp. v. Vestring, 620 F.Supp. 1271 (D.C.Kan.1985).
If an obligor may successfully void a note and recoup damages against the FDIC based on a claim of fraudulent inducement from an unwritten agreement, he will have made an end run around Section 1823(e) by asserting as fraudulent the same unwritten agreement of which a breach resulting in damages may not under Section 1823(e) be asserted against the FDIC. Federal Deposit Ins. Corp. v. Lattimore Land Corp., 656 F.2d 139, at page 146 (5th Cir.1981).
[Emphasis added].
The D'Oench doctrine and its codification in 12 U.S.C.A. 1823(e) was made applicable to the Resolution Trust Corporation by 12 U.S.C.A. 1441a(b)(1)(B) which provides in part that:
... The [Resolution Trust] Corporation, when it is acting as a conservator or receiver of an insured depository institution, shall be deemed to be an agency of the United States to the same extent as the Federal Deposit Insurance Corporation when it is acting as a conservator or receiver of an insured depository institution.
The doctrine has also been extended to the assignee/receiver of a failed federal bank:
The Supreme Court created the D'Oench doctrine to promote stability in the banking system by protecting the FDIC and FSLIC from shady and dishonest borrowers attempting to avoid their liabilities through claims of secret agreements which contradict the terms of the written loan agreements. If the D'Oench doctrine were unavailable to successor banks of the FDIC and FSLIC, then these agencies would have great difficulty in finding such banks due to the obvious risks involved for any succeeding banks.
Pelican Homestead and Sav. Ass'n v. Campbell, supra, citing Gulf Federal Savings & Loan Association v. Mulderig, 742 F.Supp. 358, 361 (E.D.La.1989).
In view of the above jurisprudence, we find the D'Oench doctrine to be applicable in the case at bar because defendants assert that Gulf Federal, as the original mortgagee, procured the promissory note and mortgage by oral misrepresentations as to the value of the property after obtaining an inflated appraisal and with the knowledge that defendants intended to resell.
Defendants suggest that the recent United States Supreme Court decision of O'Melveny & Myers v. Federal Deposit Insurance Corp., ___ U.S. ___, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994) operates to overrule the case of D'Oench, supra and its progeny. We disagree. In O'Melveny, the Court refused to create a federal common law doctrine dealing with the question of imputation of knowledge of officers of a corporation and held that California state law rather than federal law, was dispositive of that issue. That ruling is simply not applicable to the issues before us.
The United States Supreme Court has held that the defense of fraud in the inducement is not available in an action such as the one before us. In Langley v. FDIC, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), the court held that makers of a note who alleged that the bank had procured the note by oral misrepresentation could not assert the defense of fraud in the inducement in a collection action by the FDIC after it had acquired the note, as the term "secret agreement" in the statute encompassed such misrepresentations.
See also Resolution Trust Corporation v. Maldonado, 595 So.2d 774 (La.App. 4 Cir. 1992) (defense that defendant was fraudulently *754 induced into signing certain agreements barred by the D'Oench doctrine); Federal Sav. and Loan Ins. v. Brocato, 569 So.2d 17 (La.App. 4 Cir.1990) (affirmative defenses of failure of consideration, misrepresentation and breach of contract barred by the D'Oench doctrine); Grant v. Federal Land Bank of Jackson, 559 So.2d 148 (La. App. 2 Cir.1990) (The D'Oench doctrine prevents defenses such as lack of consideration, fraud by bank officials, agreements made in good faith by borrowers, and assertions that the course of dealing has altered the loan agreement); Pelican Homestead & Sav. v. Campbell, supra, (defense of breach of agreement by mortgagee's actions in cutting off defendant's line of credit without good cause barred by the D'Oench doctrine).
Accordingly, we hold that the trial court correctly ruled that the D'Oench doctrine bars defendants' affirmative defenses of lack or failure of consideration and fraud in the inducement.

INSUFFICIENCY OF NOTICE
Defendants allege that there exist material issues of genuine fact as to whether ITT Corp. gave sufficient notice of default or amicable demand in compliance with the terms of the note and mortgage. In conjunction with this allegation, defendants also allege in their third assignment of error that the existence of outstanding discovery and a rule to compel that discovery addressed to the plaintiff made the motion for summary judgment premature and, therefore, the trial court erred in granting the motion.
The promissory note executed by defendants provides in pertinent part:
8. GIVING OF NOTICES
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by mailing it by first class mail or by delivering it to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.
However, the mortgage executed in conjunction with the mortgage provides:
C. NOTICE
14. Notice. Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by first class mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.
ITT Corp. attached to its original petition copies of a notice of breach sent to defendant Shu Lau Cheuk at his residential address and to the address of the mortgaged property and also the proof of mailing via certified mail of each notice.
In connection with this issue, on January 12, 1994 defendants propounded to plaintiffs interrogatories which included the following:
INTERROGATORY NO. 13:
Please describe in detail the method, including dates, by which plaintiff has complied with all notice requirements of the note and mortgage which are the subject of this lawsuit. Please attach all copy(ies) of documents evidencing such compliance.
These interrogatories were filed with the court on the very date of the hearing on the motion for summary judgment. Also on the date of the hearing each defendant filed an affidavit which included the statement that neither he or she nor spouse "has received notice of demand, foreclosure, acceleration, or other action being taken by ITT Residential Capital Corporation and/or ITT Bowest Corporation as required by the provisions of the note and mortgage sued upon herein."
*755 After a review of the evidence we find, as apparently the trial court did, that plaintiff, ITT, proved compliance with the notice provisions which require only that notice of demand be placed in the mail. Therefore, we hold that defendants' affidavits do not create a genuine issue of material fact to preclude summary judgment. Furthermore, as no issue of fact exists regarding notice, the trial court did not err in failing to continue the motion for summary judgment to require plaintiffs to answer an interrogatory concerning the notice, as the evidence had been previously supplied to defendants attached to the original petition filed in this matter.

JUDGMENT OF MAY 13, 1994
In this last assignment of error, defendants allege that the trial court erred in rendering a second judgment dated May 17, 1994. Plaintiffs respond that the judgment of the court dated April 13, 1994, although captioned "Judgment" is, in reality, only the court's "Reasons for Judgment" and that the judgment of May 17, 1994 provides the only appealable judgment in this case.
We note that the judgment rendered on April 13, 1994 contains the following language:
The Court, after hearing the pleadings, the evidence, and the arguments and memoranda of law furnished by counsel, considering the law and evidence to be in favor of mover for the following reasons, to wit:
This matter is before the Court on a petition to enforced mortgage on real estate, via ordinaria. The petition states that ITT Residential Capital Corporation is owed One Thousand One Hundred Fifteen Three Hundred Forty-Three and 41/100 ($115,343.41) Dollars by Phenix Sheng Cheuk and Shu Lau Cheuk together with attorney's fees and interest.
This judgment then concludes with the following: "IT IS ORDERED, ADJUDGED AND DECREED that the motion for summary judgment on behalf of plaintiff, ITT Residential Capital Corporation, be and is hereby granted."
This judgment determines the rights of the parties and awards relief to the plaintiffs; therefore it is a final judgment. C.C.P. art. 1841. The fact that the judgment also contains the trial court's reasons does not render an otherwise valid judgment invalid. Hinchman v. International Brotherhood of Electrical Workers, Local Union No. 130, 292 So.2d 717 (La.1974).
C.C.P. art. 1951 provides that "A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party: (1) To alter the phraseology of the judgment, but not the substance; or (2) To correct errors of calculation."
In this connection, defendants allege that the second judgment is a substantive amendment because the first judgment awarded only a particular sum, and it did not award interest, attorney fees and costs. The second judgment, defendants argue, awarded the same sum, and then additionally awarded, in detail, interest, late charges, costs and attorney fees.
We disagree with the defendant's contention that the first judgment only awards a specific sum of money, as the judgment provides that plaintiff is suing for a specific sum, plus interest, attorney fees and coststhen, at the end, provides that plaintiffs are entitled to summary judgment which would obviously be exactly what was prayed for in the petition.
Unfortunately, since the second judgment (May 17) grants to plaintiff additional relief, this alters the substance of first judgment in violation of the prohibition contained in La.C.C.P. art. 1951, supra, and renders this second judgment null and void.
For the above discussed reasons, the judgment of the trial court dated April 13, 1994 granting summary judgment to plaintiff is affirmed, but the judgment of the trial court dated May 17, 1994 is declared null and void and is annulled and set aside. Each side is to pay its own costs of this appeal.
AFFIRMED IN PART, ANNULLED AND SET ASIDE IN PART.