hBYRNES, Judge.
The appellant, Joseph T. Hamilton, appeals that portion of a judgment dated September 19, 1997 ordering him to pay the appellee, Darlin Sylvester Hamilton, $16.50 per week for child care expenses representing one-half of the amount that Darlin Sylvester Hamilton was paying for the younger child Joseph T. Hamilton, III.[1]
I. Was it reversible error for the trial court to issue written reasons after this appeal was filed?
The record shows that the petition for appeal was filed on September 25, 1997 at 9:45 a.m. Annexed to the petition is the order of appeal which indicates that it was filed and signed on September 25,1997, but unlike the petition for appeal no exact time of signing is indicated on the order. The reasons for judgment indicate that they were filed at 10:30 a.m. on September 25, 1997, after |2the clocked time of the filing of the petition for appeal. Moreover, the appellant notes that the reasons for judgment state that “the matter is being appealed” which corroborates his contention that the reasons for judgment postdate the order of appeal, even if only by less than an hour.
*414 The appellant assigns as error the issuing of reasons for judgment by the trial court after it had lost jurisdiction over the case because the order granting his appeal had already been signed prior to the issuance of the reasons for judgment. There appears to be no prior holding squarely on this issue.
LSA-C.C.P. art.2088 provides that the trial court is divested of “all matters in the case reviewable under the appeal ... on the granting of the order of appeal ...” subject to certain enumerated exceptions. Among the enumerated exceptions there is no specific reference to written reasons for judgment.
The appellant cites State, Through DOTD v. Willard E. Robertson Corp., 542 So.2d 698 (La.App. 4 Cir.1989), in support of his contention that the trial court is without jurisdiction to issue written reasons for judgment after the order of appeal has been signed. In Willard E. Robertson Corp. the trial court was required to conduct a de novo review and to do so “the trial judge is required to have the record, including the transcript of the testimony and exhibits, before him when he considers the exceptions.” Based on the record, this Court in Willard E. Robertson Corp. was concerned that “the trial court read the transcript and wrote the reasons for judgment after the judgment of February 5, 1988 had been appealed to this Court.”[2] [Emphasis added.] Thus Willard E. Robertson Corp. should be read as more a concern by this Court that the trial court had based its ^reasons for judgment on a review of the record that had occurred improperly subsequent to the rendering of judgment and not prior to the rendering of judgment in a manner reminiscent of Lewis Carroll’s Red Queen who is best known for saying something on the order of, “Execution first and trial later.” In other words, the real concern of this Court in Willard E. Robertson Corp. was that the trial court rendered judgment first and then reviewed the record instead of the other way around as required.
. It is common to issue written reasons at a time subsequent to the rendering of judgment. However, it is assumed that the reasons are based upon a record properly reviewed prior to the rendering of judgment in spite of the fact that the reasons are only reduced to writing after the judgment may have been rendered. In Willard E. Robertson Corp. this Court was concerned not so much with the fact that the reasons for judgment were reduced to writing after the appeal was taken, but that the evaluation of the record did not take place until after the rendition of judgment.
The same cannot be said of the instant case. In the instant case the trial court gave oral reasons for judgment at the time of the hearing and prior to rendering judgment that are the same in all material respects to the later written reasons complained of at this time, subject . only to variations in phraseology. We can tell from the record that the trial court considered the full record prior to judgment in the instant case.
We assume that the appellant wishes us to nullify the reasons for judgment based on the erroneous assumption that if the written reasons are tossed out then we must review the record de novo, affording no deference to the judgment. If |4we assume that the trial court was without jurisdiction to issue reasons for judgment after the order of appeal was signed, it can be no worse than had the court attempted to make a substantive amendment to the judgment which would be nuh. LSA-C.C.P. art.l915(l).[3] The nullity of such an amendment does not void the judgment in its original form. ITT Residential Capital Corp. v. Cheuk, 94-744 (La.App. 5 Cir. 5/30/95); 656 So.2d 747, 755, writ denied 95-1634 (La.10/6/95); 661 So.2d 465. See also State v. Star Enterprise, 96-2218 (La.9/19/96), 679 So.2d 409, affirmed by State v. BP Exploration & Oil, Inc., 96-0716 (La.1/14/97); 686 So.2d 823, and Stevenson v. State Farm, 624 So.2d 28 (La.App. 2 Cir. *415 1993). Therefore, we may safely conclude that if the reasons for judgment in the instant case are null, that nullity does not have any affect on the original judgment.
Moreover, even if the reasons for judgment are null, this is not a reversible error in much the same way as erroneous reasons for judgment are not grounds 'for reversal where other reasons may be found to support the judgment. Reasons for judgment are not normally considered to be part of the judgment or an amendment to the judgment:
The trial court’s written reasons, while defining and elucidating the principles upon which he is deciding a case, form no part of the official judgment he signs and from which appeals are taken.
|5Sullivan v. Gulf States Utilities Co., 382 So.2d 184, 186 (La.App. 1 Cir.1980), writ denied 384 So.2d 447 (La.1980). See also Keys v. Box, 476 So.2d 1141, 1149 (La.App. 3 Cir.1985).
If this Court tosses out the written reasons for judgment then we are simply left with reviewing a judgment without written reasons, a common occurrence. We must then draw any reasonable inferences from the record in support of the judgment. In other words, if the reasons for judgment contained in the written reasons may be reasonably inferred from the record, and those reasons support the judgment, then even in the absence of the written reasons for judgment we would be required to draw the same inferences and ultimately reach the same conclusion.
If we consider the reasons for judgment to be equivalent to an amendment to the judgment, such an amendment could arguably be considered to be merely an “alter [ation in] the phraseology [sic] of the judgment, but not the substance”; and, therefore, permissible “at any time, with or without notice” under LSA-C.C.P. art.l951(l). The reasons for judgment in the instant case do not order the parties to do anything different from the original judgment. The written reasons do not add to nor take' anything away from the rights and remedies awarded in the original judgment. In other words, the reasons for judgment have no substantive effect on the original judgment and, if treated as an amendment to the original judgment, could be permitted under 1951(1). But if the reasons for judgment are not accorded the status of an amendment to the original judgment, they would be of much less legal significance than an amendment to the judgment and, therefore, there would be even less reason to believe that the trial court lacked jurisdiction to render them.
| (Moreover, the written reasons for judgment add nothing material to the original oral reasons for judgment. In the absence of the written reasons this Court would reach the same conclusion based on the equivalent oral reasons which were timely by any standard. Such oral reasons satisfy the requirements of LSA-R.S. 9:315.1 B.
We recognize that there may be an analogy under LSA-R.S. 9:315.1 B to the requirement under LSA-C.C.P art.1917 that there be specific findings regarding the allocation of fault under LSA-C.C.P. art. 1812C. Implicit in this requirement is that the allocation of fault must be in writing to be satisfied, although the second paragraph of LSA-C.C.P. art.1917 in which the requirement is found does not specifically say so. The jurisprudence [4] indicates that the failure to assign fault is error. Boudreaux v. Farmer, 604 So.2d 641 (La.App. 1 Cir.1992), writ denied 605 So.2d 1373 and 1374 (La.1992). From this it is arguable[5] that the rendering of fault allocation findings after the rendering of judgment would constitute a substantive amendment to the judgment, something the trial Court might not have jurisdiction to do *416 after an appeal has been taken. It is also significant that LSA-C.C.P. art.1917 states that the allocation of fault findings “need not include reasons for judgment” indicating that the allocation of fault findings have a status above ordinary reasons for judgment and may constitute an integral part of the ^judgment itself. Additionally, LSA-C.C.P. art.1917 does not specifically require that the allocation of fault be placed in the judgment, from which it might be inferred that it is permissible to include the fault allocation in subsequently issued written reasons. Thus, if the fault allocation could be considered substantive in nature, but it is permissible to make it part of post judgment written reasons, we have the potential paradox of what would be tantamount to a permissible substantive amendment to a judgment.
It is at this point that the analogy to the instant case breaks down, because LSA-C.C.P. art.1917 presupposes a requirement that the findings be in writing. LSA-R.S. 9:315.1 B allows the reasons for the deviation from the support guidelines to be oral and does not contain language from which it can be inferred that the reasons for deviation are any different in status from other reasons for judgment, other than the mandatory requirement that they be given. Therefore, where the oral reasons for judgment in the instant case were adequate and timely, the subsequently issued written reasons are superfluous and their timing is irrelevant.[6] .
| SII. Was it error for the trial court to award Darlin Hamilton child care expenses while she attends college?
Joseph Hamilton also assigns as error the requirement of the trial court that he pay one-half of his ex-wife’s child care expenses while she attended college. “ ‘Net child care costs’ means the reasonable costs of child care incurred by a party due to employment or job search, minus the value of the federal income tax credit for child care.” LSA-R.S. 9:315(7). Appellant contends that his ex-wife’s education constitutes neither “employment” nor “job search” and, therefore, may not be factored into the child support calculation. The trial court in its reasons for judgment explained:
Had the court been applying the day care costs to the worksheet calculations, Mr. Hamilton would have been required to pay the entire amount since only he is employed. Instead the court felt that a deviation from the guidelines to the extent of one-half the day care expenses was appropriate under LA R.S. 9:315.1 in that the reason for the day care was for educational needs of Ms. Hamilton. These educational endeavors had commenced prior to the break-up of the couple. To require Ms. Hamilton to effectively forego her plans would be inequitable. Additionally her continuance of her educational goals is in the best interest of the children of the parties.
However, it is uncontested that Ms. Hamilton’s attendance at college is not “due to employment or job search” as required by LSA-R.S. 9:315.3. Nor is Ms. Hamilton’s education expense the type of “extraordinary” circumstance contemplated by LSA-R.S. 9:315.1 C as justification for deviating from the guidelines — and the deviation here of $16.50 per week, when calculated on a monthly basis, represents a deviation of approximately 25% upwards from the guideline amount of $284.00 per month. Nor has this Court, in spite of its ^sympathy for an expenditure which may ultimately enure to the benefit of the children when Ms. Hamilton will presumably experience a dramatic increase in her earnings potential, found any other authority to sustain what it otherwise perceives as a desirable goal. Unfortunately, the legislature apparently does not feel that *417 education under these circumstances is an end sufficient to justify the award of the ■means to attain it.
Accordingly the judgment of the trial court is reversed in part to the extent that it awards Ms. Hamilton $16.50 per week for child care expenses. It is affirmed in all other respects.

AFFIRMED IN PART AND REVERSED IN PART.

. The judgment also ordered Mr. Hamilton to pay $284.00 per month child support retroactive to the date of his employment on August 21, 1997. That portion of the judgment is not at issue in connection with this appeal.

. Robertson Corp. at p. 700.

. LSA-C.C.P. art.1951 does not permit substantive amendments to judgments in the absence of a new trial except to correct an error in calculation. This prohibition against ' substantive amendments to judgments operates regardless of whether an appeal has been taken and is, therefore, a separate issue from that of the question of effect of the divesting of trial court jurisdiction by the appeal in the instant case.

. This court held in Hester v. Hester, 96-0189, p. 8 (La.App. 4 Cir. 9/11/96); 680 So.2d 1232, 1236, writs denied, 96-2452, 96-2468 (La. 12/6/96); 684 So.2d 933, 934, that "the proper remedy for the aggrieved party is to apply for supervisory writs or move for remand of the case” when the trial court fails to render written reasons upon request.

. But we make no attempt in this opinion to suggest how this Court would rule if faced with such an analogous question under LSA-C.C.P. art.1917. We merely recognize that such an argument would not be frivolous.

. The trial court in its written reasons for judgment states:
Specific reasons were not given at the time judgment was rendered in open court.
Our reading of the record indicates that the trial court gave substantially the same reasons orally at the time of the hearing as were included subsequently in the written reasons. The date on the transcript of the hearing shows that it was not prepared until some months after the trial judge confected his written reasons. We can only assume that in the interim between the hearing and the rendering of the written reasons, without the benefit of the transcript, the trial judge simply forgot that he had explained his reasons for deviating from the guidelines at the time of the hearing.