TERRI F. LOVE, Judge.
| tThe State of Louisiana appeals the trial court’s ruling, which quashed count one of the bill of information, to wit: one count of possession of a legend drug, tramadol. We find that the trial court did not err by partially quashing the bill of information in that sufficient evidence was produced to demonstrate that the defendant possessed a valid prescription for Tramadol and affirm.

*534
FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The State of Louisiana (“State”) charged Kevin Williams with two counts of possession of a legend drug[1] without a prescription in violation of La. R.S. 40:1238.1(A).[2] The charge was a result of a New Orleans police officer’s search incident to arrest where thirty-six pills of Tramadol and one Viagra pill were found in Mr. Williams’ possession. Mr. Williams appeared before the trial court for arraignment, pled not guilty, and was appointed counsel. Mr. Williams filed a motion to quash the bill of information as to count one, possession of Tramadol [2without a prescription, pursuant to La.C.Cr.P. art. 532(H)).[3] At the motion hearing, the trial court granted Mr. Williams’ motion to quash. The State’s appeal followed.

STANDARD OF REVIEW

A trial court’s ruling on a motion to quash is discretionary and should not be disturbed absent a clear abuse of discretion. State v. Sorden, 09-1416, p. 3 (La.App. 4 Cir. 8/4/10), 45 So.3d 181, 183; State v. Kitchens, 09-0834, 09-0836, p. 4 (La.App. 4 Cir. 3/24/10), 35 So.3d 404, 406; State v. Ramirez, 07-0652, p. 4 (La.App. 4 Cir. 1/9/08), 976 So.2d 204, 207; State v. Love, 00-3347, pp. 9-10 (La.5/23/03), 847 So.2d 1198, 1206 (“[bjecause the complementary role of trial courts and appellate courts demands that deference be given to a trial court’s discretionary decision, an appellate court is allowed to reverse a trial court judgment on a motion to quash only if that finding represents an abuse of the trial court’s discretion”).

MOTION TO QUASH

The State asserts that the trial court erred in granting Mr. Williams’ motion to quash the bill of information. Specifically, the State argues that Mr. Williams failed to prove that he possessed Tramadol pursuant to a valid prescription at the time of his arrest.
Mr. Williams submitted documents from Walgreens Pharmacy (“Walgreens”) purporting to show that he was prescribed Tramadol by Dr. S. Lamid at the time of his arrest in January 2011.
The State contends that the “prescription profile print-out” from Walgreens Ris insufficient to show that Mr. Williams possessed a valid prescription of Tramadol at the time of his January 2011 arrest. The State avers that Mr. Williams did not call any witnesses, such as the pharmacist or prescribing physician, to verify that he did in fact have a current prescription. Accordingly, the State maintains that the trial court “was left to speculate that the 36 pills found on [Defendant’s person was *535 consistent with the 180 pills dispensed to him between April 22, 2010 and May 21, 2010.”
The State asserts that La. R.S. 40:990(A) demonstrates that Mr. Williams failed to meet his burden of proving that he possessed a prescription to the otherwise illegal drug. La. R.S. 40:990(A) provides:
It shall not be necessary for the state to negate any exemption or exception set forth in this part in any complaint, information, indictment or other pleading or in any trial, hearing, or other proceeding under this part, and the burden of proof of any such exemption or exception shall be upon the person claiming its benefit.
La. R.S. 40:991 states what constitutes sufficient proof of a valid prescription. The statute provides, in pertinent part:
A. An individual who claims possession of a valid prescription for any controlled dangerous substance as a defense to a violation of the provisions of the Uniform Controlled Dangerous Substances Law shall have the obligation to produce sufficient proof of a valid prescription to the appropriate prosecuting office. Production of the original prescription bottle with the defendant’s name, the pharmacist’s name, and prescription number shall be sufficient proof of a valid prescription as provided for in this Section.
B. As used in this Section, “controlled dangerous substance” shall have the same meaning as provided in R.S. 40:961(7) and “prescription” shall have the same meaning as provided in R.S. 40:961(33).
|4La. R.S. 40:961 defines controlled dangerous substance and prescription as follows:
(7) “Controlled dangerous substance” means any substance defined, enumerated, or included in federal or state statute or regulations, 21 CFR § 1308.11-15 or R.S. 40:964, or any substance which may hereafter be designated as a controlled dangerous substance by amendment of supplementation of such regulations or statute.
[[Image here]]
(33) “Prescription” means a written request for a drug or therapeutic aid issued by a licensed physician, dentist, veterinarian, osteopath, or podiatrist for a legitimate medical purpose, for the purpose of correcting a physical, mental, or bodily ailment, and acting in good faith in the usual course of his professional practice.
All of the abovementioned statutes are contained in Part X, entitled “Uniform Controlled Substances Law” of Chapter 4 of Louisiana’s Public Health and Safety Statutes. See La. R.S. 40:961, et seq. However, in the present case, Mr. Williams was not charged with possession of a controlled dangerous substance, but charged with possession of a legend drug without a prescription in violation of La. R.S. 40:1238.1(A).[4] This statute is set forth in Part VII-A of Chapter 5, Miscellaneous Health Provisions, and entitled “Legend Drugs.” See La. R.S. 40:1237-40:1238.4.
La. R.S. 40:1238.1(A) provides that “[i]t shall be unlawful for any person to sell, deliver, or possess any legend drug except *536 upon the order or prescription of a physician or licensed health care practitioner as defined in R.S. 40:961(31).”[5] |,Tramadol is a legend drug because the Federal Drug Administration prohibits its dispensation without a prescription. La. R.S. 40:1287(3).
La. R.S. 40:991, regarding the Uniform Controlled Dangerous Substance Law, is analogous to the evidence sufficient to demonstrate legal possession of legend drugs, like Tramadol, in that La. R.S. 40:991 does not limit the nature of evidence that can be used to prove that a defendant had a prescription, but merely recognizes that a prescription bottle is sufficient proof of prescription. “It is a well-established tenant of statutory construction that criminal statutes are subject to strict construction under the rule of lenity.” State v. Brown, 03-2788, p. 5 (La.7/6/04), 879 So.2d 1276, 1280. “Thus [sic] criminal statutes are given a narrow interpretation and any ambiguity in the substantive provisions of a statute as written is resolved in favor of the accused and against the State.” Id. Therefore, pursuant to the rules of statutory construction, La. R.S. 40:991 should not be read to restrict the sources of evidence a defendant may use to establish that he possessed a validly issued prescription. Moreover, the Walgreens documents Mr. Williams produced contain his name and prescription number — the information required by La. R.S. 40:991(A). See La. R.S. 40:991(A) (stating that production of the original prescription bottle with the defendant’s name, the pharmacist’s name, and prescription number is sufficient proof of a valid prescription). The documents also provided the name of Mr. Williams’ treating physician, Dr. S. Lamid. The Wal-greens documents further indicated that he received sixty 50mg Tramadol tablets on April 22, April 27, and May 21 of 2010, and twenty Tramadol tablets on March 14, 2011.
The trial court noted that the March 14, 2011 prescription was after his January 2011 arrest, but found that it demonstrated that “Tramadol was an ongoing | ^aspect of his healthcare treatment by Dr. Lamid from at least the Spring of 2010 through March of 2011.” The trial judge also found that the thirty-six pills Mr. Williams possessed on the date of his arrest were likely remaining from the 180 tablets received pursuant to the prescriptions in April and May of 2010. Based on the documentary evidence and the information contained therein, it was therefore reasonable for the trial court to conclude that Mr. Williams was prescribed Tramadol by Dr. Lamid at the time of his arrest on January 12, 2011.
The State also contends that the Walgreens documents submitted by Mr. Williams constitute “inadmissible hearsay.” However, the State did not object to the admissibility of the Walgreens computer printouts at trial. Rather, the State agreed with the trial court that the lack of authenticity should go to the weight of the evidence. Generally, a rule of evidence not invoked is waived, and hence a failure to object to evidence waives the objection to its admissibility. Cross v. Cutter Biological, Div. of Miles Inc., 94-1477, p. 8 *537 (La.App. 4 Cir. 5/29/96), 676 So.2d 131, 139; Combs v. Hartford, Ins. Co., 544 So.2d 583, 585-86 (La.App. 1st Cir.1989). “Moreover, a party’s failure to object to inadmissible evidence when it is admitted constitutes a waiver of the objection, and the trial court does not err in considering such evidence.” Armand v. Lady of the Sea Gen. Hosp., 11-1083, p. 6 (La.App. 1 Cir. 12/21/11), 80 So.3d 1222, 1226, writ denied, 12-0230 (La.3/30/12), 85 So.3d 121. The State’s failure to raise the hearsay objection before the trial court waived its right to assert the objection on appeal.
The trial court judge weighed the credibility of the Walgreens computer printout documents submitted by Mr. Williams and concluded that he possessed a valid prescription to Tramadol. The trial court noted that neither party presented evidence regarding when Mr. Williams had appointments with Dr. Lamid, but ^nevertheless found nothing irregular or suspicious in the evidence submitted by Mr. Williams. The trial court further stated:
[T]his is not a case of first impression for this Court, and I am familiar with these Walgreens printouts as other [defendants, through their [attorneys have presented this information to the Court in other cases.
However, this is the first time that the case made it as far as to a Motion to Quash because my experience with the District Attorney ... is that once the Defense provides these printouts from the drug store, the District Attorney will nolle pros[s]e the case ... I don’t find anything suspicious, sinister, or unusual about these documents.
They certainly appear to be the exact same type of Walgreens documents that I have seen in the past and I have, in fact, obtained from Walgreens with insurance claims. So to that extent, I do find the evidence persuasive, and I do find that the provisions of Louisiana Revised Statute 40:1238.1(A), apply to this case, and the Motion to Quash is hereby granted as to Count 1, and Count 1 only.
Accordingly, the trial court did not abuse its discretion in granting Mr. Williams’ motion to quash. The Wal-greens documents demonstrated that Mr. Williams was issued prescriptions for Tra-madol by Dr. Lamid and that Mr. Williams filled these prescriptions at Walgreens both before and after the date of his arrest. As such, the trial court was reasonable in concluding “as a matter of fact” that Mr. Williams possessed a valid prescription of Tramadol at the time of his arrest. Therefore, we find that the trial court did not err in granting Mr. Williams’ motion to quash and affirm.

DECREE

For the abovementioned reasons, we find that the trial court did not err in granting Mr. Williams’ motion to quash and affirm.
AFFIRMED

. A " '[ljegend drug' means any drug or drug product bearing on the label of the manufacturer or distributor, as required by the Federal Food and Drug Administration, the statement 'Caution: Federal law prohibits dispensing without prescription.' " La. R.S. 40:1237(3); see also La. R.S. 40:961(23). The specific legend drugs that Mr. Williams was charged with possessing were Tramadol and Viagra.

. La. R.S. 40:1238.1(A) provides that "[i]t shall be unlawful for any person to sell, deliver, or possess any legend drug except upon the order or prescription of a physician or licensed health care practitioner as defined in R.S. 40:961(31).”

.La.C.Cr.P. art. 532(10) allows a motion to quash to be filed when "[t]he individual charged with a violation of the Uniform Controlled Dangerous Substances Law has a valid prescription for that substance.” Mr. Williams was not charged with possession of a controlled dangerous substance, but was charged with possession of a legend drug pursuant to La. R.S. 40:1238.1. However, the State did not object to Mr. Williams' motion to quash based on these grounds.

. As noted earlier, La.C.Cr.P. art. 532 does not provide for quashing a bill of information when an individual charged with possessing a legend drug has a valid prescription. See La. C.Cr.P. art. 532(10) (stating that a motion to quash may be filed when “[t]he individual charged with a violation of the Uniform Controlled Dangerous Substances Law has a valid prescription for that substance.”). The State did not raise this issue with the trial court or in this Court.

. " 'Practitioner' means a physician, dentist, veterinarian, scientific investigator, pharmacy, hospital, or other person licensed, registered, or otherwise permitted to distribute, dispense, conduct research with respect to, or administer a controlled dangerous substance in the course of professional practice or research in this state.” La. R.S. 40:961(31). For a prescription order "to be effective in legalizing the possession of" a legend drug, the prescription must "be issued for a legitimate medical purpose by one authorized to prescribe the use of such legend drugs.” La. R.S. 40:1238.2(A).