Leon Cannizzaro, District Attorney, Donna Andrieu, Chief of Appeals, Kyle Daly,Assistant District Attorney, ORLEANS PARISH DISTRICT ATTORNEY'S OFFICE, 619 South White Street, New Orleans, LA 70119, COUNSEL FOR APPELLANT/ STATE OF LOUISIANA
John Hall Thomas, 639 Loyola Avenue, Suite 1820, New Orleans, LA 70113, COUNSEL FOR DEFENDANT/APPELLEE
(Court composed of Judge Edwin A. Lombard, Judge Rosemary Ledet, Judge Paula A. Brown )
Judge Rosemary Ledet *497 In this criminal appeal, the State seeks review of the district court's judgment granting the motion to quash filed by the defendant, Robert Ioveniti.[1] We affirm in part; reverse in part; and remand.
STATEMENT OF THE FACTS AND CASE
On August 4, 2013, Mr. Ioveniti returned to New Orleans, Louisiana from a cruise to Belize. While disembarking the cruise ship, a drug-sniffing canine alerted to Mr. Ioveniti's crotch. Customs officers searched Mr. Ioveniti's person and discovered 498 pills of Hydrocodone, 85 pills of Alprazolam, 9 pills of Clonazepam, 23 pills of Diazepam, 25 pills of Sildenafil, and 1.9 grams of marijuana.[2] As a result, New Orleans Police Department officers arrested Mr. Ioveniti for violating the Uniform Controlled Dangerous Substances Law, La. R.S. 40:961, et seq. (the "UCDSL").
On September 17, 2013, the State filed a bill of information charging Mr. Ioveniti as follows:
Count 1: Possession with the intent to distribute Hydrocodone, a felony violation of La. R.S. 40:967(A)(1) ;
Count 2: Possession with the intent to distribute Alprazolam (also known as "Xanax"), a felony violation of La. R.S. 40:969(A)(1) ;
Count 3: Possession of marijuana, a misdemeanor violation of La. R.S. 40:966(E)(1) ;[3]
Count 4: Possession of Clonazepam, a felony violation of La. R.S. 40:969(C)(2) ;
Count 5: Possession of Diazepam (also known as "Valium"), a felony violation of La. R.S. 40:969(C)(2) ;
Count 6: Possession of a Sildenafil (also known as "Viagra"), a felony violation of La. R.S. 40:1238.1.[4]
On February 11, 2014, Mr. Ioveniti moved to quash Counts 1, 2, and 6, alleging that he had valid prescriptions for Hydrocodone, Alprazolam, and Sildenafil. The State filed a written opposition, arguing that Mr. Ioveniti had produced no admissible evidence to support his motion. Following a hearing, the district court granted *498 the motion and issued a written judgment. The State appealed.
On the State's prior appeal, this court reasoned as follows:
The record fails to show that a contradictory hearing was held on Mr. Ioveniti's motion to quash. La. C.Cr.P. art. 537 mandates that "[a]ll issues, whether of law or fact, that arise on a motion to quash shall be tried by the court without a jury." (emphasis added). Louisiana jurisprudence has previously held that La. C.Cr.P. art. 537 mandates a contradictory hearing on motions to quash. State in Interest of M.J. , 14-0622, p. 15, fn. 10 (La. App. 4 Cir. 2/4/15), 160 So.3d 1040, 1049 (noting trial court erred in failing to hold a hearing on the merits of a motion to quash); State v. Nguyen , 14-639, p. 17 (La. App. 3 Cir. 11/5/14), 150 So.3d 562, 572 (granting a motion to quash without a hearing was improper); State v. Sensat , 07-425, p. 4 (La. App. 3 Cir. 11/7/07), 969 So.2d 1274, 1276 (State was entitled to a contradictory hearing on motion to quash); State v. Stewart , 02-0196 (La. App. 3 Cir. 10/2/02), 827 So.2d 1277, 1281-82 ( art. 537 implicitly mandates a hearing); State v. Lowry , 00-107, p. 6 (La. App. 5 Cir. 6/27/00), 762 So.2d 1275, 1278 (citing art. 537 and remanding for hearing on motion to quash).
In this case, the trial court accepted the filing of Mr. Ioveniti's motion to quash as well as the State's brief in opposition to the motion. However, the October 9, 2015 proceeding does not constitute a contradictory hearing pursuant to La. C.Cr.P. art. 537. The State was not afforded an opportunity to address the merits or present argument
relating to Mr. Ioveniti's motion to quash. Thus, the record fails to show that a contradictory hearing was held on the merits of the motion to quash. For this reason, we find the trial court erred.
State v. Iovenitti , 15-1356, pp. 2-3 (La. App. 4 Cir. 4/20/16), 194 So.3d 1144, 1145-46 (" Iovenitti I "). We therefore "order[ed] that the case be remanded for a contradictory hearing on the motion to quash pursuant to La. C.Cr.P. art. 537." Id. , 15-1356 at p. 3, 194 So.3d at 1146.
At the contradictory hearing on remand, which took place on March 28, 2017, Mr. Ioveniti called no witnesses; instead, he offered the following exhibits:
• Defense Exhibit 1,[5] consisting of:
• a one-page document purporting to be a copy of a prescription for Kodone (presumably, Hydrocodone ) and Viagra and a prescription for Valium and Xanax, both allegedly written for Mr. Ioveniti by an unidentified physician (the "Prescriptions");[6]
*499 • a two-page document, entitled "Affidavit of Pharmacist Authenticating Records of Prescription Medications He Dispensed," purporting to have been signed by Raul Acevedo, allegedly a pharmacist with Free-Town Drug Store in Belize City, Belize, and purporting to authenticate the Prescriptions (the "Affidavit");[7] and
• Defense Exhibit 2: a one-page document, undated, purporting to be a letter from Mr. Acevedo to the district court setting forth the circumstances under which Mr. Acevedo allegedly dispensed a four-month supply of Kodone to Mr. Ioveniti on August 1, 2013, pursuant to "a prescription issued by a doctor [that Mr. Ioveniti] saw at K.H.M.H.[,] our local public hospital (the "Letter").[8]
The State offered the following exhibits:
• State's Exhibit 1: a page from the Belize Drug Formulary and Therapeutics *500 Manual, purporting to set forth the formal requirements of a prescription in Belize;[9] and
• State's Exhibit 2: a World Health Organization publication, entitled "Management of Drugs at Health Center Level," purporting to set forth the formal requirements of prescriptions in foreign countries.[10]
At the conclusion of the hearing, the district court granted Mr. Ioveniti's motion, stating as follows:
The Court sees no difference in the information previously provided by the State [sic], that led to this Court's ruling on October 13, 2015. So, by that very nature the Court is ruling in the same manner in which it ruled on October 13, 2015.
The district court then read its previous written judgment into the record. Subsequently, the district court issued another written judgment, again granting the motion to quash. This appeal followed.
On January 11, 2018, this court, on its own motion, ordered the district court to "supplement the record on appeal with all exhibits entered into evidence at the March 28, 2017 hearing on Mr. Ioveniti's motion to quash." In response, the district court provided this court with copies of the following documents:
• the Affidavit, marked for identification as "Exhibit 'A,' 2 pages";[11]
• two pages of hand-written invoices, marked for identification as "Exhibit 'B,' 2 pages";[12] and
• a one-page document, not marked for identification, purporting to be a prescription for "Hidrocodone," Xanax, and Valium.[13]
*501 The district court provided no documents marked for identification as Defense Exhibits 1 or 2; nor did the district court provide either of the State's exhibits.
DISCUSSION
The existence of a valid prescription is an affirmative defense to prosecution for certain violations of the UCDSL. See La. R.S. 40:967(C) ; La. R.S. 40:968(C) ; La. R.S. 40:969(C) ; La. R.S. 40:970(C). The affirmative defense must be asserted before trial in a motion to quash. See La. R.S. 40:991(C) ; La. C.Cr.P. 532(10). The motion presents a mixed question of law and fact. See State v. Tran , 12-1219, p. 2, n. 3 (La. App. 4 Cir. 4/24/13), 115 So.3d 672, 673. Thus, the motion requires a contradictory hearing. La. C.Cr.P. art. 537 ; Iovenit t i I , 15-1356 at pp. 2-3, 194 So.3d at 1146 (observing that " La. C.Cr.P. art. 537 mandates a contradictory hearing on motions to quash" and collecting cases).
At such a hearing, the defendant bears the burden of producing evidence sufficient to prove the factual allegation in his motion-the existence of a valid prescription. See La. R.S. 40:991 (providing that "[a]n individual who claims possession of a valid prescription for any controlled dangerous substance as a defense to a violation of the provisions of the [UCDSL] shall have the obligation to produce sufficient proof of a valid prescription to the appropriate prosecuting office."). The Code of Evidence is fully applicable at the hearing; and the defendant's evidence, to be considered, must be admissible. State v. Rainey , 14-0523, p. 5 (La. App. 4 Cir. 9/17/14), 150 So.3d 370, 373 (observing that "rulings on motions to quash based on La. Code Crim. Proc. art. 532(10), which require factual determinations by the trial court, also require application of the rules of evidence").
A district court's ruling on a motion to quash under La. C.Cr.P. art. 532(10) is reviewed under an abuse of discretion standard. State v. Rainey , 14-0523, p. 1 (La. App. 4 Cir. 9/17/14), 150 So.3d 370, 371 (citing State v. Tran , 12-1219, p. 2 (La. App. 4 Cir. 4/24/13), 115 So.3d 672, 673 ; State v. Williams , 12-0110, p. 2 (La. App. 4 Cir. 10/10/12), 101 So.3d 533, 534 ).
For the reasons separately assigned, a majority of the panel affirms as to Count 6; a majority of the panel reverses the judgment of the district court as to Counts 1 and 2 and remands.
DECREE
The judgment of the district court granting Mr. Ioveniti's motion to quash as to Count 6 is affirmed; the judgment of the district court granting Mr. Ioveniti's motion to quash as to Counts 1 and 2 is reversed; and the case is remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED
LOMBARD, J., DISSENTS; LEDET, J., CONCURS IN PART AND DISSENTS IN PART WITH REASONS; BROWN, J., DISSENTS IN PART AND CONCURS IN PART WITH REASONS
LOMBARD, J. DISSENTS WITH REASONS,
For differing reasons, the majority of this panel reverses the district court judgment granting the defendant's motion to quash on two counts: Count 1: possession with intent to distribute Hydrocodone in violation of La. Rev. Stat. 40:967(A)(1) ; Count 2: possession with intent to distribute Alprazolam (Xanax) in violation of La. Rev. Stat. 40:967(A)(1).[1] For the reasons that follow, I respectfully dissent.
*502 Pursuant to La. Rev. Stat. 40:991, an individual who "claims possession of a valid prescription for any controlled dangerous substance as a defense to a violation of the provisions of the Uniform Controlled Dangerous Substances Law" must only produce "sufficient evidence of a valid prescription." La. Rev. State. 40:991(A). Although the statute provides an example of what constitutes sufficient evidence: "an original prescription bottle with the defendant's name, the pharmacist's name, and prescription number, it does not confine a district court's consideration only to those elements, leaving the determination of whether sufficient evidence of a valid prescription has been produced to the discretion of the district court.
In this case, the district court found that the defendant presented sufficient evidence that his "prescriptions were filled pursuant to a lawful order of a practitioner" and granted the defendant's motion to quash, observing further that the State presented no evidence that the prescriptions (or quantity of pharmaceutical drugs) at issue were inconsistent with personal use or of intent to distribute.
The record before this court, as clarified by the district court's submission of all exhibits entered into evidence at the March 28, 2017, to supplement the record, supports this finding. Specifically, according to the district court, the defense exhibits introduced into evidence at the hearing consist of Defense Exhibit A, a notarized "Affidavit of Pharmacists Authenticating Records of Prescription Medications He Dispensed" signed by Raul Acevedo stating that he is a licensed professional pharmacist in Belize operating the Free-Town Drug Store in Belize and that in the course of his profession pharmacy practice he filled the prescriptions (for the pharmaceutical drugs at issue in this matter) which were prescribed for the defendant by a licensed medical practitioner for the defendant. The affiant also declared that "he hereby certifies that the copy of the prescriptions attached [to his affidavit] is a true and authentic copy of the original prescription records maintained by the undersigned affiant in the scope of his professional pharmacy practice." The affidavit is witnessed and notarized with an attached Apostille.[2] Defense Exhibit B, as transmitted by the district court, is a copy of the prescription for hydrocodone and Free-town Drug Store invoices for hydrocodone,
Viagra, Xanax, and Valium.[3] There are no State exhibits in the record before this court.[4]
*503 Inexplicably, with regard to the evidence introduced at trial, the writing judge misrepresents the record as it exists before this court, relying on a summary of exhibits derived from a minute entry and transcript (including a summary of State exhibits that do not appear anywhere in the record before this court) that conflicts with the actual record submitted to this court. Because, as originally transmitted to this court, the exhibits introduced into evidence were missing, this court ordered the district court to supplement the record with the exhibits introduced into evidence at the hearing. The district court complied, transmitting the Defense Exhibit A and Exhibit B with a cover letter stating that these were all the documents admitted into evidence at the hearing in this matter. To the extent that there is a conflict between the exhibits that actually appear in the record before this court and characterizations of those exhibits derived from a minute entry and transcript, we are a court of record and therefore the evidence in the record before this court must take precedence, particularly in a case such as this where the district court has, in effect, personally certified and transmitted the exhibits submitted into evidence upon which its decision is based.
The writing judge also asserts that the district court erred in considering "the Letter" because it was inadmissible, apparently referencing a letter from the pharmacist found in the record following the State's Opposition to the Defendant's Motion to Quash, filed on August 11, 2015.[5] The letter is an explanation by the pharmacist as to why he dispensed the prescriptions, including the refills, to the defendant who was hurt while travelling in Belize and presented prescriptions with supporting medical records from a local medical doctor. There is, however, nothing in the record which suggests that it was offered into evidence by the defense or that (as the writer concedes) the district court referenced the letter in either its oral or written ruling. As such, the gratuitous finding that "the Letter" was inadmissible (and that the district court abused its discretion in considering it) is a red herring.
Moreover, the district court did not err in in admitting the notarized affidavit and attached documents into evidence. La. Code Evid. art. 902 clearly states that extrinsic evidence of authenticity is not required with respect to the admissibility of "documents executed in a jurisdiction other than Louisiana accompanied by a certificate of acknowledgment executed in the manner provided by the law of that jurisdiction by a notary public or other officer authorized by law to take acknowledgments." La. Code Evid. art. 902(8)(b). There is no dispute in the record before the court that the affidavit submitted into evidence by the defendant was executed in the manner provided for by the law in Belize. As such, the affidavit was clearly admissible into evidence whether or not the district court incorrectly referenced La. Code Evid. art. 902(3) pertaining to foreign public documents. A district court's reasons for judgment (written or oral), while defining and elucidating the principles upon which the case is being decided, forms no part of the official judgment from *504 which an appeal is taken. Hamilton v. Hamilton, 97-2090 (La. App. 4 Cir. 6/24/98), 716 So.2d 412, 415 (1998) (citation omitted). In other words, erroneous reasons for judgment are not part of the judgment and, therefore, not grounds for reversal where other reasons may be found to support the judgment. Id.
In addition, whether the district court erred in interpreting La. Code Evid. art. 902(3) to be applicable in this case is not clear error. The plain language of the statute-a document purported to be "executed or attested by a person authorized by the laws of a foreign country to make the execution or attestation"-appears to encompass a licensed pharmacist attesting to the dispensation of pharmaceutical drugs in accordance with the laws of his country. As the writing judge concedes, a "public document" is not defined in the provision itself. Rather, the writing judge argues that the district court erred because the commentary to Article 902(3) indicates that the drafters intended the provision to relate only to government-generated documents. Although the drafters may have intended the term to be defined restrictively, that intention is not reflected in the provision itself nor has such definition been adopted jurisprudentially. Moreover, as a practical matter, the comment indicating that the drafters intended the provision to be more narrowly interpreted than its actual language conveys does not appear in the standard desk copy (West's Louisiana Statutory Criminal Law and Procedure) relied upon by most attorneys. As such, without specific authority restricting the provision to the drafter's intent rather than the actual language, to claim that the district court abused its discretion in relying upon the plain language of the provision is problematic. In any event, as previously stated, the notarized affidavit with its attachments is admissible under La. Code Evid. art. 902(8)(b) and, therefore, whether or not the district court erred in referring to La. Code Evid. art. 902(3) is irrelevant.
Finally, the concurring judge errs in reversing the judgment of the district court based on a conclusion that a defendant with a valid prescription may, nonetheless, be charged for possession with intent to distribute. Notably, this statement of law is one of first impression, made without being fully briefed, argued, and decided in the district court below. Independent research reveals no statutory or jurisprudential authority to support this position.
Possession is the lesser included offense of possession with intent: Section A of La. Rev. Stat. 40:967 provides that it is illegal to possess with intent to distribute a controlled dangerous substance; Section C of the same statute provides that it is illegal to possess a controlled dangerous substance "unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner" pursuant to La. Rev. Stat. 40:978. In addition, possession is specifically included as a responsive verdict to the charge of possession with intent to distribute. La. Code Crim. Proc. art. 814(47). As such, unlawful possession of a controlled dangerous substance is an inherent element of possession with intent to distribute a controlled substance which, in turn, means that a person who cannot be charged with the lesser offense cannot be charged with the greater offense.
The concern that lawfully obtained drugs are subject to abuse is well-founded but also one shared by the state legislature as evidenced by the statutory schemes which address the problem. It is clearly illegal to dispense or distribute any controlled dangerous substance without a license, La. Rev. Stat. 40:972, *505 whether or not the drugs are lawfully possessed. Thus, to the extent that the defendant in this case possesses the drugs lawfully, it remains illegal for him to dispense or distribute them to anyone else. Likewise, the "Pain Management Clinic Drug Abuse and Overdose Prevention Act" makes it illegal for a person to fraudulently obtain a controlled dangerous substance or for a physician to assist a person fraudulently obtain prescription drugs, La. Rev. Stat. art. 971.2; La. Rev. Stat 40:1060.15. Thus, to the extent that someone obtains a prescriptions for controlled dangerous substances with the intention of selling them, the state legislature has foreseen this possibility and responded legislatively. Similarly, the Prescription Monitoring Program, La. Rev. Stat. 40:1001 et seq. , provides statutory authority for the State to monitor and inhibit diversion of legally obtained controlled substances and prescription drugs. Accordingly, it is not only beyond the scope of our authority to judicially expand La. Rev. Stat. 40:961 to create an antidote to the problem of prescription drug abuse, it is unnecessary.
The role of this court is not to substitute its own factual determinations for that of the district court, i.e., the fact-finder, but, rather, to review that decision under the abuse of discretion standard. Therefore, the issue is not whether we, individually, would have made a different decision but whether the record supports the discretionary decision of the district court. In this case, there is evidence in the record to support the district court judgment and, to the extent the majority reaches outside the record and jurisprudential authority to reach a different conclusion from the district court, I respectfully disagree. Accordingly, I would affirm the district court judgment on all counts.
LEDET, J., CONCURS IN PART AND DISSENTS IN PART WITH REASONS
At the contradictory hearing, Mr. Ioveniti offered two exhibits, together consisting of three documents:[1] Defense Exhibit 1, consisting of the Affidavit and the Prescriptions; and Defense Exhibit 2, consisting of the Letter. The State contends that neither of these exhibits was properly authenticated. I agree.
In State v. Rainey , we emphasized that the Code of Evidence is fully application to contradictory hearings on motions to quash pursuant to La. C.Cr.P. art. 532(10). 2014-0523, pp. 5-6 (La. App. 4 Cir. 9/17/14), 150 So.3d 370, 373 (observing that "because a hearing on a motion to quash is a formal judicial examination, the Louisiana Code of Evidence applies" and that "rulings on motions to quash based on La.Code Crim. Proc. art. 532(10), which require factual determinations by the trial court, also require application of the rules of evidence"). In my view, principled application of the Code of Evidence compels the conclusion that Mr. Ioveniti's evidence was not admissible.
For evidence to be admissible at a hearing on a motion to quash pursuant to La. C.E. art. 532(10), it must first be authenticated-that is, the proponent of the evidence must produce "evidence sufficient to support a finding that the matter in question *506 is what its proponent claims." La. C.E. art. 901(A). Thus, evidence must either be authenticated, as provided in La. C.E. art. 901 ; or self-authenticating, as provided in La. C.E. art. 902. State v. Gray , 16-1195, p. 22 (La. App. 4 Cir. 6/28/17), ___ So.3d ___, ___, 2017 WL 3426021, *11. Generally, a district court's ruling on the authentication of evidence is reviewed for abuse of discretion. Gray , 16-1195 at pp. 21-22, ___ So.3d. at ___, 2017 WL 3426021 at *11 (citing State v. Wright , 11-0141, pp. 10-11 (La. 12/6/11), 79 So.3d 309, 316 ; State v. Cosey , 97-2020 (La. 11/28/00), 779 So.2d 675, 684 )). Nevertheless, when a district court's ruling is based upon an error of law, the ruling is no longer entitled to deference by the reviewing court because "[a] district court by definition abuses its discretion when it makes an error of law." State v. Lee , 11-0398, p. 6 (La. App. 4 Cir. 1/30/12), 83 So.3d 1191, 1196 (quoting Koon v. United States , 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (internal quotation marks omitted)).
The district court did not reference the Letter in either its oral ruling or its subsequent written judgment on the motion to quash. It is thus unclear whether, or on what basis, the district court may have found the Letter to be authentic. In any event, because Mr. Ioveniti called no witness to authenticate it, and because the Letter is not self-authenticating under La. C.E. art. 902, the Letter was not properly authenticated and was thus inadmissible. To the extent the district court found otherwise, I would find that the district court abused its discretion.
The district court did find, however, in its written judgment, that the Affidavit and the Prescriptions were self-authenticating as foreign public documents under La. C.E. art. 902(3). Under La. C.E. art. 902(3), a "foreign public document" is:
A document purporting to be executed or attested in his official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, and accompanied by a final certification as to the genuineness of the signature and official position (a) of the executing or attesting person, or (b) of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation. A final certification may be made by a secretary of embassy or legation, consul general, consul, vice consul, or consular *507 agent of the United States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States.
Neither the Affidavit nor the Prescriptions meet this definition for two reasons.
First, neither document is a public document. Although the term "public document" is not defined by La. C.E. art. 902(3), the comments to Article 902(3) make clear that the term "refers to documents that reflect the acts of government and the official activities of its officers, agents, and employees ...." La. C.E. art. 902(3), cmt. (b). The Affidavit is not a public document. The Affidavit makes no reference to the acts of the Belizean government or to the official activities of its officers, agents, and employees. To the contrary, the Affidavit represents that Mr. Acevedo is a pharmacist who operates the Free Town Drug Store; and the district court expressly found as much in its written judgment. Nor are the Prescriptions public documents. To the contrary, prescriptions-being health-care-related-are private documents.
Second, neither document bears a "final certification"-that is, a certification made by "a secretary of embassy or legation, consul general, consul, vice consul, or consular agent of the United States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States." La. C.E. art. 902(3). While the Affidavit purports to have been executed before and signed by a notary public, and sealed and certified by a Belizean Deputy Registrar General; neither of those officials is a secretary of embassy or legation, consul general, consul, vice consul, or consular agent of the United States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States. And the Prescriptions themselves bear no certification of any kind.[2] Thus, as a matter of law, neither the Prescriptions nor the Affidavit is a self-authenticating foreign public document under La. C.E. art 902(3). Accord Albitar v. Albitar , 16-167 (La. App. 5 Cir. 6/30/16), 197 So.3d 332, 343. The Affidavit and the Prescriptions were thus inadmissible.
Because the district court's judgment is supported by no admissible evidence, I would find that the district court abused its discretion in granting the motion to quash. Accordingly, I concur in the result as to Counts 1 and 2 and dissent from the result as to Count 6.
BROWN, J., DISSENTS IN PART AND CONCURS IN PART WITH REASONS:
I respectfully dissent in the result reached in the writer's opinion that finds the district court abused its discretion in granting the motion to quash count six of the bill of information when it found Defendant proved the defense of a valid prescription pursuant to La. C.Cr.P. art. 532(10).
In State v. Tran , 12-1219 pp. 3-4 (La.App. 4 Cir. 4/24/13), 115 So.3d 672, 674, this court held in pertinent part:
"Production of the original prescription bottle with the defendant's name, the pharmacist's name, and prescription number shall be sufficient proof of a valid prescription as provided for in this Section." [ La.R.S. 40:991 ] Id. But, while such production by a defendant would be sufficient proof of a valid prescription, it is not-as we recently held-the exclusive means by which a defendant may prove possession of a valid prescription. See State v. Williams, 12-0110, p. 5, 101 So.3d [533] at 536 ("Therefore, pursuant to the rules of statutory construction, La. R.S. 40:991 should not be read to restrict the sources of evidence a defendant may use to establish that he possessed a validly issued prescription.")
In the case sub judice , the district court, in reaching its conclusion that Defendant proved he had a valid prescription, found the affidavit of the pharmacist, Raul Acevedo, was self-authenticating under *508 La. C.E. art. 902. Article 902 provides in pertinent part:
Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
....
(3) Foreign public documents. A document purporting to be executed or attested in his official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, and accompanied by a final certification as to the genuineness of the signature and official position (a) of the executing or attesting person, or (b) of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation. A final certification may be made by a secretary of embassy or legation, consul general, consul, vice consul, or consular agent of the United States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States. If reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of official documents, the court may, for good cause shown, order that they be treated as presumptively authentic without final certification or permit them to be evidenced by an attested summary with or without final certification.
....
(8) Authentic acts, acknowledged acts, and other instruments attested by witnesses. (a) Authentic acts, acts under private signature duly acknowledged, and instruments attested by witnesses and accompanied by affidavits, as provided by Louisiana law, whether executed in Louisiana or elsewhere. (b) Documents executed in a jurisdiction other than Louisiana accompanied by a certificate of acknowledgment executed in the manner provided by the laws of that jurisdiction by a notary public or other officer authorized by law to take acknowledgments.
The district court concluded the pharmacist, in the affidavit, attested the copy of the prescription that was attached, was a true and authentic copy of the original prescription that he maintained in the course of his business. The affidavit was signed by the Mr. Acevedo in the presence of two witnesses and notarized by a notary public on April 8, 2015. Additionally, a stamp was affixed to the affidavit pronouncing, "Apostille, Convention de La Haye du 5 October 1961." The stamp indicated it was a public document signed by a Notary Public, and certified and signed by E.O. Pennil, a Deputy Registrar General of Belize, and imprinted with the seal of the Registrar General of Belize.
I find, as did the district court, that the affidavit was authenticated pursuant to La. C.E. art. 902. Accordingly, I would affirm the district court's ruling quashing count six of the bill of information-possession of Sildenafil.
As to counts one and two-distribution of Hydrocodone, and Alprazolam, I concur in the result. As the Court explained in State v. Franklin , 13-0488 p. 5 (La.App. 4 Cir. 10/9/13), 126 So.3d 663, 667, (quoting State v. Reaves, 376 So.2d 136, 137-138 (La.1979) ):
In making the determination of whether a given issue is appropriate to raise in a motion to quash, a court should determine whether 'it is a defense which, if successful, requires dismissal of the indictment [or bill of information] regardless of the merits of the charge ... and *509 which by its nature must be available before trial.'[1]
I find, in this case, whether Defendant had a valid prescription is not a defense which requires dismissal of counts one and two of the bill of information. Thus, a party can illegally distribute or have possession with intent to distribute a drug under the Uniform Controlled Dangerous Substances Law ("UCDSL") but have a valid prescription to lawfully possess the drug. To find otherwise will increase the potential for abusing the defense made available under La. C.Cr.P. art. 532(10), resulting in far-reaching consequences.

The record contains several interations of the defendant's surname-"Ioveniti," "Iovenitti," "Ioveneti," and "Iovenetti." For ease of discussion, we refer to the defendant as "Mr. Ioveniti," the spelling in the caption.

Apparently, Mr. Ioveniti was transporting these substances not in prescription bottles but instead taped to his person.

Since the filing of the bill of information in this case, La. R.S. 40:966(E)(1) has been redesignated as La. R.S. 40:966(C)(2)(a)-(c).

Since the filing of the bill of information in this case, La. R.S. 40:1238.1 has been redesignated as 40:1060.13.

Upon offering this exhibit, defense counsel stated:
To make sure the Record is absolutely clear this time, I want to offer, file, and introduce into evidence, first of all, the original prescription given to Mr. I[o]ven[iti] by the Pharmacist [sic] in Belize, and the affidavit of the Pharmacist, which we've submitted to the State, and which is already in the Court's Record. I'm offering, filing, and introducing those at this time.
Record, Volume II, 3/28/17 Transcript, pp. 1-2; see also Record, Volume I, p. 26 (Minute Entry for March 28, 2017, reflecting that Mr. Ioveniti offered as Defense "Exhibit 1" a prescription and an affidavit of a pharmacist).

Record, Volume I, p. 138 (the Prescriptions). After offering Defense Exhibit 1, defense counsel stated:
I would ask the Court to Quash the Bill of Information as far as the four prescriptions that were listed, those being the prescriptions for Hydrocodone , Alprazolam , Diazepam , and [S]ildenafil , and ask that the Bill of Information be Quashed as to those charges.
Record, Volume II, 3/28/17 Transcript, p. 4. Subsequently, the State argued:
Your Honor, if we look at the first prescription, the first thing that is listed on there appears to be [K]odone , that correlates with the receipt. The later parts of the prescription lists Q-ID, times 2 over 12. Your Honor, State's Exhibit 2 explains what each of these things mean. And I did have the opportunity to speak with a pharmacist. It indicates that the individual should take one pill every six hours, or four times a day, times two over twelve, means for two months.
* * *
So, it's four pills a day, times thirty days, gives you one hundred and twenty pills. Then the two over twelve indicates two months, which would put us at two hundred and forty pills. Even if you assume that the repeat two times, that still doesn't put him at the limit of the number of pills that were found on his person. There's nothing to establish that this was a later fill, but only that it was actually filled on this one individual time.
Your Honor, if you look at the other prescriptions, if you look at the Viagra that was tendered, the number fourteen indicates the number of pills that the prescription was for. Mr. loven[iti] received more than the fourteen pills listed on the prescription, rather he had twenty-five pills [i]n his possession.
Turning to the second prescription for the Valium , he is in compliance with that, as the prescription indicates for thirty pills.
For the Xanax , again, the explanation for the reading of the prescription would be two times a day. For two times a day for one month would be sixty pills, times two, would be seventy pills. The defendant was in possession of more than, I believe, eighty-five pills, which would put him over the limit for the prescription that he was in receipt of. So, Your Honor, even based off of the information provided by Defense Counsel, which the state objects to being admissible, he still was in excess of the prescription that was written for him, which the State still argues is invalid, based off of Belize's own standards.
Record, Volume II, 3/28/17 Transcript, pp. 7-9.

Record, Volume I, pp. 168-69 (the Affidavit); see also Record, Volume I, p. 26 (Minute Entry for March 28, 2017).

Record, Volume I, pp. 196-97 (the Letter); Record, Volume I, p. 26 (Minute Entry for March 28, 2017, reflecting that Mr. Ioveniti offered the Letter as Defense "Exhibit 2"). Upon offering this exhibit, defense counsel stated:
We'd offer to the Court, and this has previously been placed in the Record, I'll mark it Defense Exhibit 2, for Identification. This was a letter to the Court, from the Pharmacist, who described why he filled that prescription. He said that, Robert Ioven[iti] presented to him, on August 1, 2013, with a prescription from a doctor at the local Public Health Hospital, which [hospital, not doctor] he names, for a four month supply of Hydrocodone tablets to be taken every four to six hours. He had a diagnosis of injury with MRl's and medical records, which he saw a local doctor there for. And the Pharmacist said he made the decision to fill the entire prescription.
Record, Volume II, 3/28/17 Transcript, p. 11; see also Record, Volume I, p. 72 (Minute Entry for May 20, 2015, stating that "[the] Defense provide[d] [the district] court with a copy of the letter from the pharmacist in Belize"); Record, Volume I, p. 194 (Defendant's Supplemental Memorandum in Support of Motion to Quash, filed May 20, 2015, stating that "defendant Robert Ioven[iti] attached [t]hereto a letter from the dispensing pharmacist explaining the quantity of the medication and the prescribed dosage").

Upon offering this exhibit, the prosecutor stated:
Your Honor, I've shown Defense Counsel, this morning, but at this time I'm going to ask to offer, file, and introduce State's Exhibit 1, being the Belize Drug Formulary and Therapeutics Manual, and ask to publish it to the Court.
* * *
Your Honor, this is the requirements, it's my understanding, from Belize, for their rational prescription writing, as relates to a prescription that's been presented, in this case, from Belize, and based on the information contained in this documentation, this is not a valid prescription in Belize.
* * *
Your Honor, I will just turn to, I believe it's page number 85, the requirements for the prescription indicate[ ] not only the doctor's signature, but also the name of the doctor.
Record, Volume II, 3/28/17 Transcript, p. 5; see also Record, Volume I, p. 26 (Minute Entry for March 28, 2017).

Upon offering this exhibit, the prosecutor stated:
Your Honor, I've also provided Defense Counsel the requirements from the World Health Organization, the Management of Drugs at Health Center Level.
* * *
[T]o substantiate, not only my argument, I've researched the requirements for a prescription abroad, so, at this time the State will offer, file, and introduce State's Exhibit 2, to help the interpretation of the actual prescription, which has been presented by Defense Counsel as being valid.
Record, Volume II, 3/28/17 Transcript, pp. 6-7; see also Record, Volume I, p. 26 (Minute Entry for March 28, 2017).

See also Record, Volume I, pp. 162-63.

See also Record, Volume I, pp. 164, 166, 192.

See also Record, Volume I, pp. 167, 193.

The concurring judge upholds the district court judgment quashing Count 6: possession of Sildenafil (Viagra-a "legend drug," not a "controlled substance") in violation of La. Rev. Stat. 40:1060.13.

The transcript clearly indicates that defense counsel submitted an original notarized affidavit with attachments into evidence at the hearing without objection by the State or contradictory comment by the district court. Inexplicably, the document transmitted to this court appears to be a copy of the documents. Thus, it appears that the defense counsel submitted original documents into evidence and the district court found them to be so. Under these circumstances, any administrative error or misplacing of the actual documents which resulted in a copy rather than original notarized affidavit should not disadvantage the defendant who submitted the requisite original.

The affiant declares that he dispensed the prescriptions at issue as prescribed by a licensed medical practitioner and attached copies of the prescription for Hydrocodone and Xanax. A copy of the prescription for Viagra does not appear in the exhibit so it must be presumed that the district court found the notarized statement by the pharmacist that the pharmaceutical drugs, including the Viagra, were dispensed pursuant to a prescription issued by a medical practitioner sufficient.

The hearing transcript indicates that the State introduced as its Exhibit "1" a copy of the Belize Drug Formulary and Therapeutics Manual and, as its Exhibit "2" a document which the State declared was "to help the interpretation" of the prescriptions presented by the defense. Neither of these documents were included in the exhibits submitted to the record by the district court, nor do they appear anywhere else in the record before this court.

As such, the letter appears in the record attached to an opposition brief filed by the State rather than being admitted into evidence by the district court.

Those exhibits were, according to the March 28, 2017 minute entry, as follows:
• "[Defense] Exhibit 1-Prescription and Affidavit from Pharmacist to Authenticate from Belize";
• "[Defense] Exhibit 2-Letter to Court from Pharmacist";
• "[State] Exhibit 1-Belize Manual (pg 85) What Said the Prescription Is Not Valid Because the Pharmacist Did Not Sign the Prescription"; and
• "[State] Exhibit 2-"Requested from World Health Org for Valid Prescriptions from Abroad."

La. C.E. art. 902(3) provides that a court may dispense with the requirement of final certification if two conditions are met: (1) that the proponent shows good cause why the final certification requirement is not satisfied; (2) that a reasonable opportunity has been given to all parties investigate the authenticity and accuracy of the official documents. In this case, because Mr. Ioveniti did not offer the Affidavit and the Prescriptions as foreign public documents (that was a post hoc theory of authentication advanced by the district court after the hearing), Mr. Ioveniti was never called upon to show good cause why none of his exhibits bears a final certification. More importantly, however, Mr. Ioveniti did not give the State a reasonable opportunity to investigate the authenticity and accuracy of the Prescriptions (or the representations set forth in the Affidavit) because-for the four-and-a-half years this case has been pending-Mr. Ioveniti has never disclosed the name of the physician he claims to have written the Prescriptions. Additionally, because the district court has provided this court only with copies of documents, rather than originals, it is unclear whether the defendant complied with La. C.E. art. 904.

In State v. Franklin , 13-0488 (La. App. 4 Cir. 10/9/13), 126 So.3d 663, the ground raised by the defendant in his motion to quash was not one set forth in La. C.Cr.P. arts. 532 and 534. This Court, in reviewing the trial court's granting of the defendant's motion to quash, explained the lists set forth in arts. 532 and 534 were "merely illustrative, and motions not based on the grounds therein should not be automatically denied (citations omitted)." Id ., 13-488 at p. 5, 126 So.3d at 667. Although this case is not directly on point, the case law for which it is cited lends guidance for the issue before this Court.